WOODRUFF K. SOLDNER      4023-0
MICHAEL R. CRUISE        7334-0
NICOLE KALAKAU           9508-0
RAFAEL K. RENTERIA       9202-0
LEAVITT, YAMANE & SOLDNER
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 1740
Honolulu, Hawaii 96813
Telephone: (808) 521-7474
Facsimile: (808) 521-7749
Email: soldner@lyslaw.com
       cruise@lyslaw.com
       kalakau@lyslaw.com
       renteria@lyslaw.com

Attorneys for Plaintiffs
JEFFREY A. GREEN and
SAMUEL LIEVANO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEFFREY A. GREEN and SAMUEL LIEVANO,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Civil No.: _____<br>(Non-Motor Vehicle Tort)<br><br>COMPLAINT; SUMMONS<br><br>(Federal Tort Claims Act,<br>28 U.S.C. Section 2671, *et seq.*) |

## COMPLAINT

Plaintiffs JEFFREY A. GREEN and SAMUEL LIEVANO ("Plaintiffs"), by and through their attorneys, Leavitt, Yamane & Soldner, for causes of action against Defendant above-named, hereby allege and aver as follows:

## THE PARTIES

1. Plaintiff JEFFREY A. GREEN ("Plaintiff Green" or "Green") is a resident of the County of Montgomery, State of Maryland.

2. Plaintiff SAMUEL LIEVANO ("Plaintiff Lievano" or "Lievano") is a resident of the County of Montgomery, State of Maryland.

3. Defendant UNITED STATES OF AMERICA (hereinafter "Defendant United States Government" or "United States") is named as the defendant pursuant to and under the provisions of the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq*.

## JURISDICTION & VENUE

4. This court has original jurisdiction over this civil action, pursuant to 28 U.S.C. §1346(b) and 1331, in that Plaintiffs bring this this civil action on a claim against the United States, for money damages, arising from personal injury to Plaintiffs, caused by the negligent or wrongful acts and/or omissions of employees and/or agents of the United States, while acting within the scope of his/her/their office, employment or agency, under circumstances where the United States, if a private person, would be liable to the Plaintiffs, in accordance with the laws of the State of Hawaii.

5. The acts and/or omission complained of herein, and which forms the basis of the relief sought herein, occurred within the District of Hawaii, and venue is proper in this court pursuant to 28 U.S.C. §1391(b)(2).

6.  Pursuant to the provisions of 28 U.S.C. § 2675(a), Plaintiffs presented the herein-mentioned claim against the United States, for money damages, for personal injury to Plaintiffs to the appropriate Federal agency, and said appropriate Federal agency acknowledged receipt of said claim on September 12, 2019.

7.  The above-mentioned appropriate Federal agency has failed to make a final disposition of the above-mentioned claim within six months after said claim was received on September 12, 2019, and, pursuant to 28 U.S.C. § 2675(a), the failure to make a final disposition of said claim, as of the date of this filing, is deemed a final denial of the claim.

## COUNT I – NEGLIGENCE/MISCONDUCT

5.  Plaintiffs allege and incorporate the preceding paragraphs as though fully set forth herein.

6.  Prior to and on July 30, 2018, Defendant United States Government owned, operated and/or controlled the property on the Island of Oahu, State of Hawaii, known as Naval Station Pearl Harbor, also known as Pearl Harbor Naval Shipyard, part of Joint Base Pearl Harbor-Hickam ("Pearl Harbor").

7.  Prior to and on July 30, 2018, Defendant United States Government owned, operated and/or controlled the building located at Pearl Harbor described as "Building 394".

8.  For approximately seven years prior to July 30, 2018, employees of Lockheed Martin Corporation ("Lockheed") worked on the second floor of

Building 394 pursuant to a contact with the Defendant United States Government and in furtherance of the goals of and to the benefit of the Defendant United States Government.

9. On and prior to July 30, 2018, Defendant United States Government controlled Lockheed's employees means of accessing and exiting the second floor of Building 394.

10. On and prior to July 30, 2018, Lockheed's employees were provided access to and from the second floor of Building 394 exclusively via one ramp on the west side of the building (the "West Ramp") and another ramp on the east side of the building (the "East Ramp").

11. The only other potential access to or from the second floor of Building 394 was an internal staircase that was made unavailable to the employees of Lockheed by a locked door.

12. Defendant United States Government did not provide Lockheed's employees with any way in and out of the second floor of Building 394 other than the West Ramp and East Ramp.

13. The West Ramp is located on the same side of Building 394 as the parking lot used by Lockheed's employees.

14. Because of the location of the parking lot, Lockheed's employees used the West Ramp to go into and out of Building 394 almost exclusively and, at a minimum, more frequently than they used the East Ramp.

15. Lockheed employees used the West Ramp to go in and out of the second floor of Building 394 approximately four to six times per day, including to come and go at the start and end of each day, for lunch and for breaks.

16. Prior to and on July 30, 2018, Defendant United States Government knew of Lockheed's employees' use of the West Ramp, as described herein above.

17. Defendant United States Government had and assumed the obligation to inspect the condition of Building 394, including the West Ramp, and to repair and/or remediate any unsafe conditions, so that the West Ramp was reasonably safe for its known, intended and reasonably foreseeable uses.

18. Prior to and on July 30, 2018, the West Ramp was equipped with wooden railings that were bolted to vertical stanchions affixed to each side of the ramp, intended to protect ramp users from falling off the side of the ramp (the "Railings").

19. Prior to and on July 30, 2018, the top of the Railings of the West Ramp measured twenty-six inches in height from the walking surface of the ramp.

20. Prior to and on July 30, 2018, the wooden Railings were decayed where the bolts held them to the stanchions.

21. The above-noted decayed wood was not visible to a reasonable user of the West Ramp but would have been visible to any reasonable person who inspected the condition of the ramp for safety.

22. On and prior to July 30, 2018, Green was an employee of Lockheed working on the second floor of Building 394.

23. At approximately 11:55 a.m. on July 30, 2018, multiple employees of Lockheed and of AECOM, another company that was working on the second floor of Building 394, including Green, walked down the West Ramp to go to lunch.

24. One of the aforesaid workers had to return to the second floor of Building 394, so the others, including Green, waited on the West Ramp.

25. While waiting, Green and others moved to sit along a section of the twenty-six inch Railing.

26. Suddenly and without warning, a section of the Railing failed, breaking from the stanchions where it was decayed at the bolts, allowing Green and another employee to fall off the West Ramp and onto the paved surface approximately twelve feet below.

27. The West Ramp Railing failed due to the failure of the Defendant United States Government to reasonably inspect, repair and maintain the Railing.

28. As a result of the aforesaid fall and impact on the paved surface, Green sustained severe, life-altering injuries.

## COUNT II –DAMAGES

29. Plaintiffs restate and incorporate the preceding paragraphs as though fully set forth herein.

30. The negligence and misconduct of Defendant United States Government was a substantial factor in Plaintiff Green sustaining severe, life-altering and permanent injuries.

31. The negligence and misconduct of Defendant United States Government was a substantial factor in Plaintiff Green sustaining past and future damages, including but not limited to:

    a. Medical-rehabilitative expenses in excess of $173,957.85;

    b. Lost wages and diminished earning capacity in an amount to be proven;

    c. Future medical and rehabilitative expenses in an amount to be proven;

    d. Extreme pain, severe emotional distress and mental anguish, loss of enjoyment of life and other general and non-economic damages as allowed by law; and

    e. Plaintiffs seek leave to amend the Complaint at the time of trial to include such additional amounts and damages as may be appropriate.

32. Plaintiff Samuel Lievano is and on July 30, 2018 was the spouse of Green.

33. The negligence and misconduct of Defendant United States Government was a substantial factor in Plaintiff Lievano sustaining past and future

damages, including but not limited to severe emotional distress and anguish, loss of enjoyment of life, loss of companionship, care and consortium arising from the injuries to Plaintiff Green.

34. WHEREFORE, Plaintiffs demand judgment against Defendant United States of America for general and special damages in amounts to be shown at trial; for the Plaintiffs' costs, interest, and such other and further relief as the court deems just and proper in the premises.

DATED: Honolulu, Hawaii, April 24, 2020.

/s/ *Michael R. Cruise*
WOODRUFF K. SOLDNER
MICHAEL R. CRUISE
NICOLE KALAKAU
RAFAEL K. RENTERIA

Attorneys for Plaintiffs
JEFFREY A. GREEN and
SAMUEL LIEVANO